Students. May it please the Court, good morning. Henry Tovmassian appearing for appellants, James Husson and his parents. Your Honors, the district court here made three errors. First, it required appellants to exhaust administrative remedies under the Individuals with Disabilities Act even though student James Husson was not eligible for any benefits under the IDEA statute. Second, it dismissed with prejudice the appellant's 1983 claims arising from violations of the First Amendment and the Fourteenth Amendment to the U.S. Constitution. Third, it also dismissed with prejudice the appellant's ADA claims arising from, against Ms. Patton, arising from retaliatory conduct. With regard to the exhaustion argument, the IDEA statute is very clear in almost every provision in it that its benefits, including the benefit of an administrative due process tribunal, is available to a child who is eligible for IDEA benefits. What did you seek under your complaint? We sought accommodations which are customarily provided to students in the form of a 504 plan. You wanted some damages under 504 accommodation under rehabilitation, correct? Correct, ma'am. And you say that Husson failed, or that the district failed to supply him with a free appropriate public education, right? Yes, as available under the rehabilitation of the owner. And then you say that he was discriminated and retaliated against and that he and his parents had violations of the ADA, correct? That's correct, ma'am. And then you say you want an injunction for failing to provide appropriate accommodations. That's correct, Your Honor. Isn't the fact that you asked for injunctive relief your biggest Achilles heel here? You can't get injunctive relief under any of these other acts. You can get injunctive relief under the IDEA. Well, I beg to differ, Your Honor. With regard to a 504 plan, if a district fails to provide a student with 504 accommodations, there's nothing in the law that prevents a litigant from obtaining injunctive relief in the form of an order that certain accommodations be provided to a student. And isn't that the appropriate act that we have to interpret, 20 U.S.C. 1415.1, which says, nothing in the IDEA shall be construed to restrict or limit the rights and privileges, procedures, and remedies available under the Constitution in the ADA Title V of the Rehabilitation Act, except that before filing of a civil action under such laws seeking relief that is also available under Subchapter 2, the procedures under Subsection F and G shall be exhausted. Isn't that what it says? That's what it says, Your Honor, and the key provision in that paragraph is also available under Subchapter 2. Well, and I understand that. But the problem that you have is that when you plead what you do in your pleadings, and then you look at what there is in 20 U.S.C. 1415.1, and then we look at Kutaisi v. Las Vergenes Unified School District, the 2007 case, which is consistent with other circuits, says the plaintiffs have got to exhaust their administrative remedies before filing this suit. The student in Kutaisi, Your Honor, was eligible under IDEA. As a child who was already eligible under IDEA was also seeking certain remedies under 504, and there's no disagreement at bar that a child who is eligible under the IDEA statute and is seeking claims under 504, IDEA, 1983, or any other statute would have to first exhaust. But the difference here, Your Honor, is that this child in the time at issue was not eligible under the IDEA. The district had held an IEP holding that. Well, just because they held it doesn't make him so. And there's no dispute as to that, Your Honor. There's no dispute between the litigants that during the process. The problem comes in that just because the district holds something doesn't make it so. That's what you're appealing. That's what you're going after. Not that, Your Honor, not the decision that he wasn't eligible for IDEA in the time at issue. There were two decisions. Let me ask you another question. You now argue a futility exception, which I've read about. Where did you raise that in the district court? We raised it in the brief, Your Honor. In the district court? That's correct. The district court didn't rule on it. That's correct, Your Honor. But if the court has available the chances of it proceeding. I have all my briefs. I have all what I have, and I have what the district court ruled. But I frankly can't find where you even raised a futility exception in the district court. We did raise it in the brief, Your Honor. But if the court were to conclude that that wasn't and should have been fled in the complaint, that, again, is something that we ought to be given leave to amend the complaint and so allege. But that argument was raised and discussed in the briefing. Those were my original questions. I have to give my colleagues a chance. Go ahead. So what was your problem with not exhausting the administrative remedy? It's real simple, Your Honor. I practice in the special education field. There's nothing wrong with going through the due process proceeding. The problem is the California Office of Administrative Hearings does not hear 504 claims. This court recognized it in the Mark H. decision, which was rendered earlier this year. In that case, the litigant was eligible under IDEA and filed an IDEA case and at the same time was alleging claims under 504, and the OAH, the Office of Administrative Hearings, ruled on the IDEA claims but did not rule on the 504 claims. The simple reason is they have no jurisdiction to rule on 504 claims that are not related to any IDEA claims. In this case, during the period at issue, there were no IDEA claims, and that's the rub. So if you plead a claim that is not covered by the IDEA, you just avoid the whole process? Well, he wasn't an IDEA student. IDEA requires, you know, to be eligible for IDEA, one has to have a disability that's identified in the statute itself and has to need special education as a result of that. This child, during the time at issue, did not need special education as a result of that. All he needed were simple accommodations in the classroom, such as time and a half for assignments, to be given extra time if he misses homework, that type of thing. These are not special education services. Is it customarily even given to students without a 504 plan? That's what this child needed at the time at issue. He did not need nor require special education. I'm sorry? Why aren't they special? Because special education is defined as a specialized kind of education. He didn't need to be taught in any specific different way than the other kids are being taught for him to benefit from his education. All that he needed was to be given the same program, the same instruction. How about under the ADA? Same thing under the ADA, Your Honor. The Rehabilitation Act and the ADA address issues outside of the IDEA. The IDEA is a self-contained statute. If you're found to be eligible under it, then you benefit from it. Are you telling me that schools are not required under the IDEA or the ADA if a student has certain disabilities, not to give them a little more time on taking an exam? Under the IDEA, if there's any suspicion of a disability, that's where a child plan comes into play. Under IDEA, if there's any suspicion of a disability, the district is to assess that child and if found to be eligible, provide certain special education services. Okay, but extra time is provided routinely. That's right, and it's routinely provided outside of IDEA as part of a 504 plan or in the general education classroom in general. And you're saying it's not covered under ADA either. No, it is covered under the ADA. In other words, if a child needs certain accommodations which are not provided. They're not turned down by the school, but you had a remedy to exhaust and you go to higher-ups in the school system. What's the purpose of that? Your Honor, the exhaustion requirement is before the Office of Administrative Hearings. They have no jurisdiction to rule on 504 issues. For me to be able to present any kind of an argument without being found to have filed a frivolous complaint, I would have to argue that this child is eligible under IDEA. I can't make that argument during the period at issue. I can't do that without filing a frivolous complaint. The district found him not eligible. We agree that during the time at issue, he was not eligible under the IDEA. To impose every 504 litigant who was not at all seeking any remedies under IDEA to exhaust through the Office of Administrative Hearings due process procedures is frankly ridiculous because they have no jurisdiction to rule on 504 adjudications unless there's some relationship. So if you've got a child that's got a disability and needs more time to take an exam or they need to take an exam because they're separate from all others because they get anxiety attacks and all that, or they're legally blind and they need a proctor to read the questions to them. Your Honor, that would be a service which would have to be provided through IDEA. That's correct. So that's another one. Okay. So you're saying that, forget about that, the other two that I mentioned. You're saying that the only remedy you can get, if you can't get the principal of the school or the administrators there to accommodate the child, is to file a lawsuit in federal court. No, what I'm saying is the remedy that if a child only needs time and a half, let's take that example, that child will not be found to be eligible under IDEA. What's commonly done is that child is given what's called a 504 plan, which is given to the teachers which instructs the teachers to give that child time and a half on tests, for example. That is not the kind of specialized education that the IDEA is intended to address. The IDEA addresses things like occupational therapy or speech therapy for a child based on their needs, things like placing them in a specialized type of a classroom so that the child can be educated with his strengths being paid attention to, that type of an arrangement where the child needs more than simply accommodations in a general education classroom. But when you have a child who only needs that, which is what we allege that this child needed at the time at issue, those can be provided and are customarily provided with a 504 plan. And that wasn't provided by the district in this case. And the only other remedy that the parents have in that situation is to go to federal court. The district court correctly pointed out there is no exhaustion requirement for 504 claims and for ADA claims if there's no relationship with IDEA, which is the case here. Briefly, I'd like to reserve the remaining time for rebuttal if I may. Thank you very much. Good morning. May it please the Court, my name is Carol Wu and I represent the respondents. Any temptation by this Court to adopt the position of the plaintiff would be inconsistent with the Ninth Circuit cases that are relevant to this case. Any temptation? Temptation, yes. Thank you, Your Honor. Starting with the case of Rob versus Bethel, school district number 403, the court in that case, it always has been an analysis on the nature of the injuries and whether or not the IDEA can redress the injuries to any degree. It doesn't have to be all of the injuries, but just some of them. And the Rob case also says that money is not the only ball. The fact that the appellants have asked for money in this case, really, that's not the defining issue. In the Kutazi case, there were about 18 different complaints that the parents had. And in Kutazi, the court held that the IDEA exhaustion requirement applies to the parents as well because the IDEA protects both the students and parent rights. And also, I'd like to mention to the court that under the IDEA, they're required to provide educational and related services. The component of related services is very important in this case because what the appellant is asking for is extra time. He's asking for reinforcement, repeating instructions. And the appellant's psychologist, Dr. Cukes, asked for about 15 different accommodations that included psychological services, behavioral modification, and things like that. And all of those would be encompassed under the IDEA. Well, as I understand it, and the one that I focus counsel on and the one I'm now focusing you on, the district court's decision suggests that by trying to seek this injunction relief in their complaint, that that injunction relief was, yes, regarding the denial of a 504 accommodation. But because they sought such injunction relief, that was also the exact type of services that is the type of remedy for injuries that could be redressed under the IDEA. Isn't that correct? That's correct. And if we find then, as I understand it, that the services can be redressed under the IDEA, then at that point we have to suggest that they exhaust the remedies. That's correct, Your Honor. And because the exhaustion requirement, there is a public policy behind that, and that is to allow the traditional interest of state and local agencies in the process of education. It allows for the discretion and expertise in fact-finding. It allows a record to be built in case of federal litigation. It allows for a full exploration of the technical issues in the case. And lastly, it affords the judicial economy by allowing state and local agencies the opportunity to correct any shortcomings in their program before it goes into litigation. Well, and I understand that. But what I'm really getting at, and this is sort of just my question to counsel, it isn't a matter of what they allege or what they put in your complaint, but what it really is is that if it is also available under the IDEA, that then they must also go through the exhausting of the remedies. Isn't that true? That's correct. And I think the Rob versus Ethel case, they did say that money was not the only bomb. In some of the past cases, they've asked solely for monetary damages, but the courts have gone back and they've actually looked at whether the remedies available under the IDEA will assist in determining what the child's special education or related services would be. Well, if they had only asked for money in this situation, then the case would have been a little bit more difficult because of the case law that we have in front of us. But asking for the injunction gave the district court the chance to suggest that it's also available under the IDEA. Certainly. And this was not a case of Whitty versus Clark or Blanchard versus Morton, where the educational issues regarding the student had been completely resolved and the only thing left would be the monetary damages. I would like to point out to the court that under the Prival for Accommodation Scheme, Title 34 of the Code of Federal Regulations, Section 104.36, provides that public schools need to put into place procedural safeguards to protect parents and students with respect to Section 504, and that the due process or scheme under the IDEA will satisfy the procedural safeguards under Section 504. So is there any other... What about the individual liability issues? The individual liability, okay. Assuming that this court determines that exhaustion was not required in this particular case, we have two causes of action against an individual principal by the name of Barbara Catton. And the first one was the Section 1983 Civil Rights Claim. The case law in that area indicates that you cannot use a violation of the ADA or Section 504 as a foundation for your 1983 claim. So in this regard, the district court correctly determined that, looking at the allegations, the appellants were indeed basing their claim on retaliation in violation of the ADA. We have, you know, allegations that the 504 accommodations were not being provided, that there were issues of retaliation against the parents and James' younger siblings, and other similar allegations. So the district court did correctly rule... All right. What about the ADA and the Rehabilitation Act? Let's opposition that with respect to the... Individual liability. Right. The appellant does rely on this Ostrich v. Regents of University of California case that the analysis was that they looked at the anti-discrimination laws, they looked at the anti-retaliation and determined that, with respect to the anti-retaliation, they used the word person. However, the Ninth Circuit... Well, under the ADA, we're involved in Section 1203, I believe it's C. Correct. And if there's an employment violation there, what's the individual liability? Well, okay, the analysis was that if there was an employment violation, you would go to Section 12117, and the remedial provisions would be contained in Subchapter 1. If there was a violation that had to do with public services, you would go to Subchapter 2, and if there was a public accommodation issue there, you would go to Subchapter 3. But with respect to our situation, there is no remedy. There is no specific remedy listed in any one of those subchapters, so the courts have reasoned that Congress never intended to create a cause of action under our circumstance, and that the focus in the ostrich case on the word person was unnecessary, or that they focused on the wrong word and they should have instead focused on the intent of Congress. What about a public service or an education violation? Well, in this case, it wouldn't fall into any one of these subchapters, 1, 2, or 3. Well, would it fall under the Rehabilitation Act's remedies? The remedy of the Rehabilitation Act being... Section 794A, 29. That would focus on equality, but you would still then have to decide which one of these categories it would fall into, whether it's a public service, public accommodation, or an employment matter. And it not falling into any one of those three, there would be no guidance as to what the remedies would be. I'd say there's an employment violation. Now, where would you go? If there's a... You'd go to the Rehabilitation Act. Yes, you could. Okay. And then you look at 42 U.S.C., Section 2008. And what does that tell us? Your Honor, I'm not familiar with that section at this moment. This is complicated. It is. It is complicated. But we sort of... Have you ever charted all this out? I've attempted to. I've tried to follow it. But I think where this all goes back to is the Miller v. Maxwell International case from the Ninth Circuit, and that was, I think, I believe in 1993. And I think since then, the majority of the courts have very clearly stated that an individual would not be included under the Anti-Retaliation Clause. Well, we've tried to trace it back. I would think that if the court could make, you know, good sense out of it, it would have issued another opinion that might have clarified perhaps the Miller case. All right. Any other questions? Now, say this goes to arbitration. And what's the next step? The next... Well... What would be accomplished there? Taking the approach of what should have happened in this case, Your Honor. Yeah. After the school district determined that... Then we conclude that these remedies need to be exhausted. All right. Then what happens? Well, the failure to exhaust administrative remedies is a jurisdictional issue. And the court... What would happen is the plaintiffs would have to... The plaintiffs... The appellants would have to go back and they would have to exhaust their administrative remedies. They would have to have a due process hearing or something that resembled that. There would be perhaps an ALJ, an administrative law judge or... Well, don't you have these hearings routinely? Yes, those are routinely heard. Those are very routine and they take perhaps, you know, if there isn't any delay, they take perhaps four to five months. And they would go over the issues that the parent and the student have and there would be an attempt to resolve some or all of those issues and there would be a record. Generally, sometimes there are experts that come on for both sides that talk about whether or not the student does or does not have a particular disability. How about this particular student? In terms of... What the next step is in the administrative process? There would be an administrative process that would address each of the dozen or so recommendations that Dr. Cukes has. There would be a determination as to whether or not the student does indeed have a disability that would qualify him for accommodations under Section 504. There could be discussion about whether or not he really does qualify under the IDEA. So, I mean, that is an administrative process that can occur. The technology, the expertise can be used and developed and that there would be a record if the matter proceeded into federal court under, you know, the IDEA. But your first hurdle is to exhaust this administrative remedy unless it would be futile to do so. And in this particular case, it's very clear based on the intent of the leaf that the appellants have requested that it's not futile. You can go to a due process hearing and have those issues addressed. Thank you very much. Thank you. Counsel, I'm concerned about one of your answers to me because I tried my best to see. I mean, it seemed to me that the school district in every situation in this particular matter, the parents tried, the school district said no every time. It seemed to be a no-win situation. And so, I looked all over to try to find that you had put utility in front of the district judge. And the district judge cites in his opinion, plaintiffs have not alleged that they have exhausted administrative remedies provided, nor have they alleged any facts to establish they should be excused from the exhaustion requirement. And one of the cases he cites is the case of Doe v. Gonzalez where the administrative relief would be futile or inadequate. Now, you're saying the district judge lied in this opinion? No, Your Honor. The complaint did not specifically allege that exhaustion would be futile. And what I submitted earlier is if that was the basis for attacking the complaint, the appropriate remedy would have been to allow me to amend and allege futility. Did you ask? I disagree with Your Honor. Did you ask to amend? Your Honor, we briefed the issue of futility and the district court judge even ruled in his decision, stated whether or not this child is eligible under IDEA, he still must exhaust. And that's just not a sensible objection. What he's saying under this is that if I read his opinion, and I'm trying to read this opinion just like you are, what he says is this is not enough to suggest that just because you plead one cause of action under 504 or the ADA that you're out from under the IDEA. He says that instead what we're looking at, and that's what the statute says, if that is also available, then you're going to go under the IDEA whether you plead it or you don't. That's all I agree with Your Honor. And the problem is that this is all to make sure that all these cases don't come to us every time. I agree with Your Honor. They will talk to the educational authorities and try to work it out between the parents and the children and the teachers and the administration rather than automatically coming up here. And he said, why didn't they do this? And especially given what it is that you asked for, that it could be done under the IDEA. And he also said that the cases you're citing against that were not appropriate because in your situation, it wasn't a situation where the case has already been resolved and they're now here. In this situation, we still got a school district who isn't giving them what they want. We still got a school district who isn't going through the process. And so they should have gone to the IDEA under the exhaustion so that we could have got the parties together. That's what he said. The place where the analysis fails is the court, the district court, failed to recognize that not all children with disabilities are entitled to any forum under the IDEA. To be entitled to any forum under the IDEA, you have to first establish you are eligible under the IDEA. However, when you look at what you see, the related services that were supposed to be implemented by the district into the 504 plan, incorporating Dr. Cooke's recommendations, those are just the type of thing that can go under the IDEA. If you are eligible as a student under the IDEA, counsel tried to explain what it would look like to file the due process case. The very first issue that the due process tribunal would address is, is this child eligible under the IDEA? And counsel acknowledged that maybe he wouldn't be found to be eligible under IDEA. If he's found to be not eligible under IDEA, he is not entitled to any remedies under the IDEA. In this case, you have no dispute that he's not eligible under IDEA. But this should found him not eligible. We agree. And so in view of that, what is available under the IDEA? Well, that's when you go to the administrator's book and exhaust those administrative requirements. Just because you come in and say, we agree, you know. Well, but I have to say something different there. That doesn't mean that that's... But, Your Honors, if I go in and say, I don't believe he's eligible, but I'm exhausting because the court asked me to, that'll be a fast due process decision. I don't know about that, Your Honors. I hope it isn't. I hope it isn't. Your Honor, if this child is not eligible, he doesn't get anything. Let's say that the person at the first level was wrong. And you say, I agree. So where does that get you? It gets me back to where I want to be, which is a 504 plan for this child. That's what we asserted he needed. There is a body of law in California that speaks to you cannot find a child eligible under IDEA unless and until you try means other than that to meet his needs. One of the ways that the district could have tried to meet his needs was through a 504 plan. That's what we wanted. And, you know, to go back to IDEA, you have to pass the threshold of eligibility. And the district found him not eligible. We agreed at the time. And if I were to be forced to file a due process complaint, I would have to allege something I don't believe. And I might also add the latest amendment in the IDEA allowed for a transfer of trace fees in cases where a litigant files a frivolous complaint. So I would be exposing myself and my clients to a frivolous complaint with the OAH. The OAH has the ability to find that a complaint is frivolous. Well, let me ask the counsel for the school district. What is the situation of that one's ability under the IDEA? Currently or just in general? Was this child eligible for relief under the IDEA? No, the school district conducted an assessment. And they determined that he did not qualify for special education services under the IDEA. This is a situation where the appellants themselves wanted their son to be assessed under the IDEA. He didn't file a complaint with the Office of Civil Rights for discrimination. So they were assessed. And it wasn't until after they were assessed and it was defining that he did not qualify for special education services that they decided, well, we want the 504 and we're going to go out and we're going to have Dr. Cukes assess, you know, our son. And he wrote a letter and he had about a dozen accommodations there listed. So, I mean, this is a case that is perfect to go through the exhaustion process because those issues, those complaints can be addressed. In the Kutonzi case, the court said that, well, situations about even the scheduling of an IEP under the IDEA, that can be addressed under the due process procedures. But these procedures are under the statute, right? Yes, the procedures are prescribed under the statute. This is, for lack of better words, this could be viewed as a transparent attempt to bypass the exhaustion requirements of the IDEA. The IDEA does not say you have to be, you know, qualify for special education services before you can exhaust. If you look at the remedy or the nature of the injuries and whether or not the administrative process can address. Well, take us through that then. Pardon? Well, show us what these people are asking for. You can redress through the administrative process. That's true. They had about a dozen and 15 or so accommodations that they requested. One was that they wanted to have a visual reinforcement. They wanted to have a repeating instruction. Can that be addressed through? Of course. Yes, it can. Well, let's go through them then. Okay. You know, I want to know. Can I get my list? Okay. And I'm reading this from the first minute complaint. Having directions repeated to ensure that he has heard them correctly, that's something that can be addressed through the administrative process. Having James summarize directions to ensure that he has a clear understanding. That kind of process can be developed in an administrative process so that that request can be implemented. The use of lists to circumvent inconsistencies in his auditory working memory. Ensure that James has all the correct assignments written down and that he has the material necessary to complete the assignments. An agenda that is signed by teachers and parents to ensure that assignments are correctly written down and that they are completed at home. A binder in which all completed assignments can be prized. Visual organizer to outline long-term projects. Frequent communication between home and school to address issues before they can become problematic. Assistance to develop more organized written output. And then there's a request for, as part of his 504 plan, a thorough behavior modification plan using rewards and praise in lieu of punishments. As part of his 504 plan, there was a request that the student might benefit from educational therapy to address his auditory memory concerns and organizational skills in writing. And lastly, there was a request that the student might benefit from participating in individual psychotherapy to address his anxious thoughts and symptoms. So these are all matters that can be handled in an administrative proceeding. Thank you, Your Honors. Your Honors, I would welcome a request from the panel to the Office of Administrative Hearings as to the question of whether it has jurisdiction to address these issues for a child who is not eligible under the IDEA. I practice law in special education. I have for years. They do not handle any issues unless it is an issue having to do with a child who is eligible under the IDEA. That's a simple fact. The National Court of Appeal recognized it in the Weiner case some decade ago. That is the fact that we're dealing with, and I think that's where we're getting caught up here, is the statute allows for exhaustion only if there are certain remedies available under the IDEA. All of these, this litany of remedies, would be available under the IDEA if the child was eligible under the IDEA. But since the child is not eligible under the IDEA, those remedies are not available to him under that statute. They are available to him under 504, which is the reason why we filed the case. So what's your answer to that statement? My answer to that statement, Your Honor, would be that under Section 504, Title 34 of the Code of Federal Regulations, Section 104.36, which sets out the procedural safeguards, they don't say you have to go to an IDEA ALJ judge or go to the Office of Administrative Hearings for IDEA. They just say that Title 34 says you have to set, the school has to set up procedural safeguards. And one of those would be to, you know, protect the rights of the parent and the child and to give them an opportunity to have an impartial hearing with opportunity for participation by the person's parents or guardian or representation by counsel. So that's got nothing to do with IDEA. No, it doesn't, but the point being is that... What do you mean, no, it doesn't? Well, it doesn't specifically... So you don't need to worry about IDEA. Right, the IDEA process has been held to satisfy this requirement. But under Title 30, under Section 504 of the procedural safeguards, it doesn't have to be an IDEA proceeding. You just have to have an administrative proceeding to address the concerns of the parents and the students. And even then, that would be helpful as opposed to being futile because the policies behind having local governmental agencies and schools resolve their own issues, that would be fostered. All right. Thank you, Your Honor. Your Honor, the provisions that counsel just read from do come from the IDEA. The protection of parental participation, the tribunal for due process proceedings are all part of IDEA. It appears under 20 U.S.C. 1415b-6. All right. Well, I wasn't waiting for that to figure this out. I just want to briefly... I know my time is out. If I may have a minute to respond to the other two issues, what counsel said as to... As to the ADA issue, Your Honor, counsel... Your Honor has it correct, and I submit that the Stern decision, cited both by the district and the district court in the opinion, does lay out the actual means by which you analyze this issue. And to just recap, if you are dealing with a public service such as education, which is the fact pattern here, if you have a violation of 12203, you go to the Rehab Act to look for your remedies. And the Rehab Act goes to Title VI of the Civil Rights Act for its remedies, which does permit, in the form of Regulation 100.7e, does permit claims against individuals for retaliatory behaviors or retaliatory conduct. As to the 1983 claims, the district court and counsel argue that our claims are really based on the ADA and the Rehab Act, even though we are expressly making it clear in our complaint that they are based on the First Amendment and the Fourteenth Amendment of the United States Constitution. That's clearly played in the complaint. I believe that should stand. We are not seeking... If the court needs to make it clear that we're not entitled to any remedies under 1983 because of ADA and the Rehab violations, we would welcome that. But we do want to have the ability to pursue our 1983 claims for violations of the First Amendment and the Fourteenth Amendment. Thank you very much. Thank you very much. This matter will stand submitted. National Insurance v. Specter. Good morning, Your Honors. My name is Peter Ross for the appellant. There are a number of issues I'd like to address. Here we're concerned with whether the prior publication exclusion applies to exclude insurance coverage. The first issue I'd like to talk about is whether the substantial similarity test applies to this trademark trade dress case. In my view, it does not. That test was developed in the defamation context. There the important factor was not the exact words used and not the particular expression of the idea, but the idea expressed. If I say, for example, he's sexually promiscuous, I'm saying the same thing as he sleeps around. The gist or sting of both those statements is the same. If I'm liable for the first statement for defamation, I'm certainly liable on the second statement as well. Under trade dress law, however, it is the particular expression of the idea that matters. We have two labels here. One's before the policy period. That's our 1999 label, and we have a 2001 label that's within the policy period. Didn't you argue for the corporate law, though, that the 1999 label was exactly when the harm began and not 2001? Well, we were accused of violating their trade dress rights with both labels. But that doesn't mean that each label is the same for purposes of this prior publication analysis. Isn't that how you got the motion for summary judgment or the temporary restraining order dismissed, below by claiming that everything happened in 1999 and not 2001? No. Didn't know what the judge said? Well, I'd have to explain in detail what happened to express why that's not the case. It wasn't your language. We used a variation of the 2001 label since 1999. And though they modified the label between 1999 and 2001, the alterations were incremental, and Spectrum's trade dress was largely consistent since 1999. Wasn't that your exact argument? That had to do with one issue, not this one. And I'll explain what the issue was that we were dealing with then. Well, yeah, it was a different issue, because at that time you were trying to make sure you could get out of a temporary injunction, and you wanted to make sure that you could get rid of that problem on your company, and so therefore you had to argue that the labels were consistent, that they were like the same. But now we're trying to say, no, they're totally different, so that we can get out of the exclusion that's under the express written words and policy. Two different issues, two different tests. In the first instance, that injunction was granted, the temporary restraining order was granted with no notice to us, and it was granted based on a false declaration. The declaration told the court that we had gone directly from our green and black label to our famous Hollywood sign label, and that that had just happened within the last three months. And that's why it was an emergency. So we went in front of the court and said, wait a second, all these facts are wrong. There were incremental changes in the label that happened over time. There's no emergency here, because we've been using a label with these elements in it for the last several years, and we haven't done anything about it. You began doing this in 1999, before the policy was issued. Yes, we had elements in the label of which they're complaining. Now the question is a completely different one. The question is, what does it mean under this insurance policy when it says, we cannot receive coverage for a publication that was made before the policy period? Well, we know. It's a fact that no one can dispute that there was a label before the policy period, the last one being our 1999 label, and there was a label during the policy period, our 2001 label. Now we're dealing with contract interpretation, and we're dealing with the laws concerning contract interpretation. We're not dealing with debunking the argument on a preliminary injunction phase that we all of a sudden changed their label, and it's an emergency now, and they need to be shut down before they can even be heard, which is what we were dealing with earlier. Now we're calmly deliberating what that policy language means when we do have two different labels. We can all look at them with our own eyes and see they're two different labels. But the language of the policy, while you like to suggest what you're arguing, says, does not apply to an advertising injury arising out of oral or written publication of material whose first publication took place before the beginning of the policy period. So we're really talking about the first publication. We're not talking about what publication came thereafter. We're really trying to determine whether there was a first publication before the policy period, and then trying to determine whether there was a first publication. Then we say, take what you said to the poor court who had already issued the injunction. We've used a variation of this label since 99, and even though it's modified, they were only incremental and the trade dress was largely consistent since 99. In other words, we've been doing all this since 99. We haven't really changed it very much at all. So how do I get out of that being the first publication? Well, I'll tell your Honor why I think that argument doesn't hold water. Well, that's why I asked the question. Yeah, and the argument that the court is making is one that I have heard in many trade dress cases, and that's where people mix up the words with the trade dress. Words can be used to describe the trade dress and changes in the trade dress, but the trade dress itself is what we see when we look at the label. So I could say, for purposes of that prior motion, there were incremental changes, and the elements were consistent between these labels because they were. There was a searchlight in the label. There was a big star in the label. I can also say with equal correctness that the second label, the one we're concerned with in the policy period, looks different. The one you're concerned with in the policy period. Right. The one I'm concerned with is, is this label, the same label, consistent from the first time of introduction in 1999, which just had incremental changes because I'm really looking at, was there an advertising injury which comes right out of the policy? Well, it has to be an advertising injury from the label that we created during the policy period. The only way. In order for you to get covered. Yes. If it was created before the policy period, you don't get it. Yes. So the only way to get to the conclusion that it was not created during the policy period would be to say it's the same label we had before the policy period. And in making that assessment, no words matter. It doesn't matter how I describe the label then. It doesn't matter how I describe the label now. The trade dress is what we see when we look at the label. So now this court, and indeed any court addressing this trade dress question, has to look at the 1999 label and look at the 2001 label and say, are those the same label? And in my view, looking at them, they're not. And that's why I started at the place of saying that it's the particular expression of the idea that counts in trade dress. We can't look to the defamation law. My problem is not that, because if you had not labeled it, if you hadn't said what I suggested you said, then I could say, well, trade dress, trade dress, you know, I understand there's differences in that particular term. But what you said was the spectrum's trade dress was largely consistent. So we're not talking about one trade dress one time and one trade dress another. We're talking about a trade dress largely consistent from 1999, and then I'm supposed to apply that to whether that arises out of an oral or written publication whose first publication took place before the beginning. And I would suggest that the court has to ignore the words and look only at the trade dress. Well, the problem that I see with that is that I could ignore the words, and I could go back to a summary judgment and give it to the jury. But I can't ignore the words if I look at judicial estoppel, which says current position must be clearly inconsistent with the previous position, must have succeeded in persuading the court. Current argument would create a perception that either the first or second court was misled and an unfair advantage. So I'm not looking at the label now. I'm looking at what did the first court buy based on representation by counsel to make its decision. And then what are you arguing now? Now, to me, it's the representation. The old judge didn't look at the label. He looked at what you represented to him as to the being largely consistent and therefore not a problem and that the plural injunction ought to be lifted. And that's why those words are important, and I can't forget them, and I can't just be like a jury and go back and look at the label. If I say I want to be just like a jury, well, then I go back to summary judgment, and you don't have a judicial estoppel argument. I understand exactly what the court is saying. Here's my response to that. Why don't you refer to these different labels here? I've got them here. I've got the 1998 label, the 1999 label, the 2001 label. Let's see what else I've got here. And the 1998 label. All right. The prior judge, it was a woman judge, was not— Judge Manilla? Pardon me? Judge Manilla? Yes. Was not presented just with my words. The prior judge had the labels in front of her as well. And so my words were a guide to what she should look at in this situation, and what impressed Judge Manilla was the fact that they had misrepresented the prior history. And so when I was saying that the same label, the same elements had been in that label for several years, she looked at the labels in front of her and said, well, I see that. I shouldn't be stopped from saying later on, now look at those same two labels and let's see if they're different enough that for purposes of contract interpretation, we can say there was a new label or a new publication during the policy period. But counsel, if in fact that's what you're going to say now, how can you then say to that judge, and that's the reason for the injunction being issued, we're looking at the same stuff. Look at these and see how similar they are. There's no inconsistency to them. There's no way that this could have been something which was harnessed up to be a big emergency now. They're all the same. And now you come back and say, oh, no, they're not the same. They're different. And because they're different, the policy applies. Well, your Honor just exaggerated what I had said. Oh, I think that's exactly what you said. No, when the court read it earlier, it said there had been only incremental changes. That was the exact language. What you basically said to the judge was, judge, we've been doing this since 1999. We've made some small changes, but it's the same. If they were going to complain, they should have complained in 1999, not in 2001. That's what you told the judge. Well, it's even a variation of that. It was there were incremental changes, and it's now not an emergency. I mean, I didn't say they couldn't complain, but I said it wasn't an emergency. Did the case go away because of what you said? Well, it went away after we paid $3.5 million. And now we're here arguing about whether we have to reimburse the insurance company for part of that money. So, I mean, to say it went away. The injunction went away, didn't it? The injunction went away. My feeling is it went away because the judge, Judge Manila, was upset that she had been misled about how the changes took place. My argument to her was only it's not an emergency here. There have been incremental changes, and we've had something largely like this for about three years or two years, whatever it was. Now we're concerned with when I said an incremental change, how much is the increment? Because an incremental change can be enough to trigger a new coverage under this policy, and the only way to make that analysis is not to say, well, Mr. Ross said incremental change before, is to say I'm going to look at the label during the policy. I'm going to look at the label before the policy, and I'm going to make my own determination based on this objective reality as to whether there's a different label involved. And that's where I think the case comes down, and I think that's the proper analysis here. I'd like to take a moment to address one other aspect of what we're talking about here, and that's the individuals, the individual officers and directors, whether they can be liable to repay this money. And to illustrate the mischief here, I'd like to use a hypothetical. Now imagine the following. I don't want to talk about the mischief because you can certainly make an argument about mischief. We do have an abuse of discretion standard here, right? Yes. And on this particular issue, it's in the judge's discretion what happens here. Well, this is de novo review from a grant of summary judgment. Well, you're suggesting a 59E motion is a de novo review? On a grant of summary judgment. Well, we're not – if you're only talking about the summary judgment, then I've asked you the wrong question. I'm not trying to get involved. If you're talking about, however, which officers will pay or who will pay, that's a 59E motion. Because you didn't make the argument in the first case. You only could make the argument post-judgment in presenting your 59E motion. That's an abuse of discretion motion. Well, the way I look at it, there was no evidence put in the record on the summary judgment motion itself that would support liability of the individual officers. So there was no basis looking at it de novo to enter judgment against the individual officers. But you didn't raise that at the first hearing. You only raised it in a 59E motion to the poor judge after the decision was put together. Well, the issue was raised because we challenged whether summary judgment was proper. So generally challenging summary judgment is enough rather than challenging that issue? When the issue is whether they've introduced any evidence into the record from which judgment can be entered, I think it's enough to say they haven't met their burden. I understand. Because I think you could make your argument about what missed it could come. But my worry is on the standard of review as to what I now determine about what the district judge can do. I appreciate your argument. Where is this product sold? Throughout the United States. Drug stores, places like that. Thank you, Ron. Appreciate your help. Thank you. Good morning or good afternoon. May it please the Court, my name is August Lajuar. I'm here on behalf of United National Insurance Company. And I'd like to respond to a few of the points that counsel previously just made. It seems to me that it's a very fine exercise that he's trying to perform in splitting hairs in terms of statements that were made in the underlying litigation and their effect that they have now. It's an attempt to put forward a position where you gain an advantage and then when circumstances change and you succeed there, then you back out of that in subsequent litigation. They advocated a position. As your Honor noted, they said that the trade dress was consistent. It was minor modifications throughout. All of the elements were first published in 1999. That's the label that is at issue. And the 2001 label was just minor, minor changes to that. And they did that and they were successful in defeating the injunction. Then when it comes to the coverage action, then it's whoa, whoa. That's not what we meant. It's different standards. There's a certain element of common sense that I was going to play here. It is if you're going to make a position, argue a position, you kind of need to stick with that position throughout the litigation. To back away from it later on in a coverage action when it suits you is, in the terms of one court, playing fast and loose with the courts. It's not appropriate. If you're going to make a position, you're going to stand by it and you're going to win on it, you're wedded to that position later on, including in a coverage action. In regard to the issue of whether it's a Rule 59e motion, it clearly is. The issue was raised. Was the carrier aware of what was going on in this lawsuit? We were aware. I'm not sure if it was at the inception, but we were aware of the action for a good portion of the time, yes. Did you know you were going to get called upon to pay some money? Somewhere along the line. In the underlying litigation, we knew we were going to get called upon to pay some money. We were called upon to pay some money, including by the individual insureds, and we did pay some money. We paid $420,000 to get them out of the fire that they were in in the underlying litigation. We pulled them from that, but we made it on the condition that we reserve the right to argue in the coverage action that there was, in fact, no coverage. California law specifically allows that. It's for the benefit of the insured because the insured faces potentially much greater damages in the underlying litigation. So it presents the opportunity for the insurance company to be right by the insured, to pull them out there, but to still reserve its coverage arguments. Is the time when you sent your coverage letter suggesting that you didn't have coverage in your mind, but that you would come forth to pay, when did that letter come? Is that in the record? I believe it is in the record, Your Honor. When? I do not recall offhand. Did it come before they made the presentation to the court on the injunction? I do not believe so. I don't think that my recollection is that United National came into the case after the injunction. The injunction issue was heard very early on, and it was later on that the insurance carriers came in and began having a role in the underlying litigation, participating in mediation, listening to defense reports, analysis of liability. That's where we came in. And a reservation of rights letter was issued, and when settlement time was approaching and the settlement was being discussed as part of a continuing mediation, at that point when we saw the opportunity for settlement, we said okay. We were asked to contribute to settlement, and we did. And we did so under a reservation of rights, which was very explicit. Was the carrier aware of the statement that was made to Judge Manoa? That was made to Judge Manoa at the time of the preliminary? To get relief from the injunction. I do not recall. We became aware at some point. I'm not sure when we became aware of that. Well, were you aware of it at the time you paid the money? I believe. I don't believe so. I can't say for sure I was handling this case at that point. I don't know if another attorney or someone else from the insurance company knew at that point about that statement. But it was. There would be a note in your file of what you expect. I would expect if there was something, yes, that there was notice. There were many pleadings in this case. There were motions for summary judgment, cross motions for summary judgment, all in the underlying case that came after the preliminary injunction. The pleading file was quite voluminous. I believe there were actually two rounds of summary judgment motions. So there was quite a substantial amount of material that was. Did the carrier get copies of all those papers? Eventually we did, yes. Not essentially while it was going on. Yes. It was filed and you got a copy of it. Yes. But the point is that even though we were aware of that, there was. You're paying the money. It's a little inconsistent with your argument now. Well, no, because what we could have done is we could have said, okay, we don't think that there's coverage here. And you know what, we're not going to contribute anything. And public policy-wise, where does that leave the insurance? What about saying, oh, we don't think there's coverage here because look at these pictures. And we start with the first one, and that's a 98 label, right? Yes, the 98 label. That was a 98 label. And then we understand that they're pretty much the same if you just look at the trade draft. And so if all you had is the only thing involved in the lawsuit was the 98 label and the rest are the same except with just a little modification. So basically the label you were using throughout, to use throughout, was originated when there was no coverage. Well, there had not been a determination of no coverage. It was our opinion that there was no coverage, and counsel has obviously – Is that a reason? Yes. And frankly, we discussed the – we actually compared those labels and said, here is why we don't think that there is coverage. And this was communicated to the insurance. We said, look at – This is that before you gave them the money? Yes. Well, I thought you said something else. So we had the 1998 label, which was the first one. Then they changed it in 1999. That's when they added the spotlights. And then the 2001 label was the minor incremental changes that they talked about in the declaration. We knew about those, and we said, look, we don't think that there's coverage here. Look at these labels. We're talking about things that are changes in form, not in substance. We said there's not coverage here. They disagreed with us. They said, no, we think that there still is coverage here, and you're looking at it the wrong way. And as of right now, we have the opportunity to settle this case for potentially three million – for three point however many million dollars. They were – if we were unable to contribute that and to settle the case, they faced liability and exposure far in excess of that amount. So the insurance company made the – What was the coverage here? Pardon me? What was the coverage? The type of coverage? It was an excess liability? What was the amount of the coverage? This was, I believe, a $1 million policy, an excess liability policy. So we were an excess carrier. So we had all of the underlying carriers saying, okay, we're going to put in some money for this. And the only way to get it done, according to the insurance at the time, was if we put in our money. And we faced pressure to do so. They said, you have to. We all face potential bankruptcy. The individual insurers face bankruptcy if you don't do it. So there was immense pressure for the carrier to go ahead and put some money on the table to get the claim settled. The carrier could – Did the individual insurers face bankruptcy? That's what they claim in the pleadings, yes. The insurance companies? No, that Tremaine and Schwartz, who were officers of the corporation, claimed that they would face bankruptcy if the case was not settled and if they faced an adverse liability verdict in the underlying trial. So the insurance company made a decision. They could have said, you know what, you're on your own. We're going to stand by no coverage at all. And it's all up to you. And, you know, that puts a lot of risk on the insurer. Another option in California is the insurance company can say, you know what, we're going to bail you out of this one, but we reserve the right to try and get our money back and try to coverage issue later. And that's what we did. And I think that that's – you know, was it the insurance company being a nice guy? Who knows. But the insurance company made the decision, hey, we're going to settle this underlying case. We're going to cut your exposure, but we're not giving up on our coverage arguments. And we're confident in our coverage arguments, and we want the right to bring those later. Let me ask you a question. What is the legal principle upon which – upon which spectrum should not be able to argue a different principle in the second court action? I mean, you say they said one thing one time, and now they're saying something otherwise. What is the legal principle you're relying upon on that particular issue? Judicial estoppel. Was that argued to the court? Yes, it was. To the district court? Because the district court didn't rule about judicial estoppel. I don't believe so, but it was argued to the court. In fact, the district court ruled that it was a decision that had been made by a prior court, and therefore it was as if it were the decision of the court already, and therefore they couldn't go back on it, which is not judicial estoppel. That would be raised in the conduct. That was one argument they made, and I need to back up just a second and correct myself, because we also rely on waiver was an issue that they did not raise in the court below – or excuse me, not raise in the opening brief. And judicial estoppel – So what – under what basis may I jump to judicial estoppel in affirming the court's decision? Because – The district court didn't make it on judicial estoppel. On what basis may I make it my decision based on that issue? I believe that you're looking at the case and – I mean, what case would allow me to substitute now my view of what to do in this particular matter? Well, if you're considering the case to be looked at de novo, as opposing counsel has said, then you would have the opportunity to say that in the motion for summary judgment, they're judicially estopped from so arguing. And in making that determination, do I have to suggest that the district court was wrong in holding a res judicata decision? I don't necessarily think that the court below was basing it alone on res judicata. The court below said, in response to arguments made, that perhaps counsel for Spectrum – I don't want to get too much into my decision in reading the holding or the ruling from Judge Vanella. But you're really not going to argue that what one rules on preliminary injunction or injunction has any effect on the final ruling of the case, are you? No. So a res judicata ruling was certainly not appropriate. I would say that if – again, I would say that I don't believe that the court made its ruling. The district court below said – Well, it talks about preclusive effect. That doesn't sound to me like anything but res judicata. And it also sided on the ground. It went through an independent analysis where it actually compared – Well, if we're going to go on an independent analysis, do you think the facts line up here such that if we can't find judicial estoppel, that we can do anything except remand? Because this is a summary judgment hearing. Counsel's argued a lot of facts. You've got a lot of facts. There's none of those facts which are equal. Everybody's saying different facts. He says that the label didn't come until in the policy period. You claim it came before the policy period. It's a question of fact if I have to start looking at labels as to what happened. How can I do anything except send it back on summary judgment if there is no judicial estoppel? Because there is no question of fact. Everyone agrees what the labels are. Everyone agrees about – there's no dispute. Somebody's got to determine whether the policy, as excluded, matches those particular situations about the facts, and they're already arguing that it's not the same label. Somebody's got to determine whether it is or it isn't. That's not something a judge can do. If the facts are undisputed, I would say that it is something the judge can do. There's no dispute about the labels. There's no dispute that the elements pre-existed the instruction data of the United Nations. Did our judge, in this particular matter, make that determination? Yes, he went through the elements. He went through all of the – and when I speak of elements, I'm talking about the elements that were alleged by the plaintiffs in the underlying litigation, the Sunset Plaintiffs. He took – Well, what we're not talking about in the underlying. We're talking about now. Did the judge, on this record, make a determination on summary judgment suggesting all the facts were there, no dispute of facts, but based on those facts alone, I make that determination? Yes. Or did he just say preclusive effect? No, I do not believe he based it exclusively on preclusive effect. He looked at the elements. He compared them. And then in the motion for reconsideration, the United Nations filed, because he found one issue of fact. And what we did then at that point is we asked for a motion for reconsideration, and we pointed out these other issues, because he was new to the case. Judging now, he was actually here in the preface litigation first, too. So he was a little unfamiliar with it. The issue that – the fact issue that he found initially had not been briefed. It was a one-paragraph mention in the briefing from the insureds. It was a footnote in the opposition, and that was it. And he found that essentially on his own. And what we did is we set a motion for reconsideration, but look at this. This is – Judge Minella has made these rulings, and she's made these findings, and this helps clarify the issue. And I think the judge was careful to say when he stated that I am not – that perhaps counsel is reading too much into my looking into Judge Minella's findings. Because what he did is he went through those elements and said undisputed the elements were there. Nothing is disputed. All that's disputed is the legal interpretation. So that's an issue of loss appropriate for summary judgment. And what he did is he came down and he said on the motion for reconsideration, after looking at some of Minella's findings and listening to additional argument, he said, you know what? You're right. I'm going to grant the motion for reconsideration. So he did look at it, and he did not make the granting of summary judgment through the motion for reconsideration solely on a judicial estoppel-type argument or the preperclusive effect. It was – I would – he went through the elements, and he made a decision. That was my question.  Thank you, Your Honor. Thank you. I'm sorry I'm out of time, but I would appreciate two minutes. No. You know, you've got four minutes, so I think we have a week. And we're going to take – we've been sitting here for three hours now, so we're going to take a very brief recess.
judges: Pregerson, Smith, Collins